IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE MILAM HALL,

                Plaintiff,

vs.                                    Case No. 07-4128-SAC

DOUGLAS P. WITTEMAN, et al.,

                Defendants.


## MEMORANDUM AND ORDER

Plaintiff invokes the court's federal question jurisdiction, asserting claims under 42 U.S.C. §1983, 42 U.S.C. §1985, and 18 U.S.C. §1962, as well as various state law claims. This case comes before the court on motions to dismiss filed by multiple defendants, as well as on various additional motions.

**FACTUAL SUMMARY**

The court accepts all well-pleaded allegations, taken in the light most favorable to the plaintiff, as true. *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1305 (10th Cir.2001). In October of 2006, plaintiff became aware that state district court Judge Fromme would be up for retention in an election to be held on November 7, 2006. Plaintiff believed Judge

Fromme's past treatment of plaintiff's mother was of public concern, so plaintiff drafted an advertisement for placement in various newspapers, captioned **"PHILLIP M. FROMME, DISTRICT COURT JUDGE, SHOULD NOT BE RETAINED ON NOVEMBER 7, 2006**" ("Plaintiff's Advertisement"). Dk. 21, Exh. A. Plaintiff's attempts to contact Judge Fromme in November about this matter were unsuccessful.

By October 30, 2006, plaintiff had more than eight hours of conversation and written contact with the publisher of *The Coffey County Republican* (defendant Catherine Faimon). He showed them court records which he believes persuaded them that his advertisement was true. Accordingly, plaintiff contracted with the *Republican* and paid to publish his advertisement twice, which it agreed to do. On October 31st, *The Coffey County Republican* ran plaintiff's letter to the editor, which spoke to the same topic as did Plaintiff's Advertisement. Plaintiff's Advertisement was published once in *The Coffey County Republican*, as well as in *The Anderson County Review*, *The Ottawa Herald* and *The Osage County Herald.* Abbreviated versions of Plaintiff's Advertisement were also published via plaintiff's letters to the editors of *The Topeka Capital Journal*, *The Anderson County Review*, and *The Ottawa Herald*.

2

Plaintiff expected his advertisement to be published in *The Coffey County Republican* a second time on November 3rd. On that date, to plaintiff's surprise, *The Coffey County Republican* did not contain Plaintiff's Advertisement, nor did it subsequently publish it. *The Coffey County Republican* did not inform plaintiff prior to November 3rd of its decision not to run Plaintiff's Advertisement a second time. Instead, the November 3rd edition of the *Coffey County Republican* contained an advertisement supporting Judge Fromme (the "Responsive Advertisement") and challenging the plaintiff, captioned: "**WHO IS GEORGE MILAM HALL? The real truth about his attack on Judge Phillip M. Fromme**." Plaintiff believes the advertisement makes knowingly false accusations about him, was done with malice, and is libelous.

The Responsive Advertisement closed by stating:

6. It is unfortunate that our local paper did not take the time necessary to ascertain all the relevant facts before publishing this attack in *The Coffey County Republican*.

7. Judge Phillip M. Fromme has the support of the entire membership of the Coffey County Bar Association. We would urge you to vote to retain Judge Phillip M. Fromme on your ballot on November 7, 2006.

*PAID FOR BY*: Stephen J. Smith, Attorney at Law - James R. Campbell, Attorney at Law - Douglas P. Witteman, Coffey County Attorney - Thomas L. Robrahn, Attorney at Law - Linda S. McMurray, Attorney at Law - Brenda R. Kelley, Attorney at Law - Brad L. Jones, Attorney at Law - Bryan M. Hastert, Attorney at Law.

Dk. 1, p. 12-13. The above-named attorneys, the Coffey County Bar Association, Judge Fromme, and others are among the defendants named in this case.

Plaintiff claims that on November 1, 2006, defendants Smith, Fromme, Ryburn, Campbell, the Coffey County Bar Association, and the Franklin County Bar Association threatened to sue the publisher of *The Coffey County Republican* if she printed Plaintiff's Advertisement again, and coerced her into publishing the Responsive Advertisement instead of publishing Plaintiff's Advertisement a second time. Plaintiff claims the Responsive Advertisement caused the public to not do business with him, damaged his reputation, his property and his business, and caused him great mental anguish and emotional distress.

Judge Fromme was retained by vote on November 7th in what plaintiff characterizes as a "narrow margin." Dk. 1, p. 13. Thereafter, plaintiff appeared before the Coffey County Commission and addressed what plaintiff believes was "liability imputed to them by Witteman," Dk. 1, p. 14, but they never took action on the matter or responded to plaintiff about it. Plaintiff additionally filed a criminal referral/complaint with defendant Witteman in his capacity as Coffey County Attorney, urging him to

4

prosecute the defendants under Kansas criminal statutes, but to date Witteman has not responded to plaintiff and no such action has been commenced. *Id.*

The above facts constitute the gravamen of plaintiff's complaint. Other matters included in plaintiff's complaint will be addressed below as necessary to the resolution of the motions.

**PLAINTIFF'S MOTIONS**

Plaintiff has moved the court for leave to file excess pages (Dk. 116) in his responses to defendants' motions to dismiss, and to amend his responses. This motion is granted to the extent that the court will consider all plaintiff's pleadings, motions, and briefs currently filed. The court appreciates plaintiff's efforts to consolidate his responses to the multiple motions to dismiss and to avoid any unnecessary redundancy.

Plaintiff has filed various motions relating to Judge Fromme's motion to dismiss. *See* Dk. 72 (motion for clerk's entry of default); Dk. 43 (motion for oral argument and to strike Judge Fromme's response). The court fully understands plaintiff's contention that he sued defendant Fromme as a private citizen for acts taken outside the scope of his employment as a district judge, and that defendant Fromme answered only in his official

5

capacity as a district judge.  The court fully considered and squarely

rejected plaintiff's claims in its prior decision on plaintiff's motion for default

and entry of default, Dk. 62, as well as in its reconsideration of that order,

Dk. 102, specifically finding that 'defendant's Fromme's timely motion to

dismiss (Dk. 9) constitutes a sufficient responsive pleading by him in the

capacity in which he was sued and precludes a default judgment against

him." Dk. 102.  The current motions address identical issues. As no reason

to alter the court's previous ruling has been shown, these motions shall be

denied.

Plaintiff has additionally filed a motion for appointment of counsel, Dk.

118. In civil actions, the court may appoint counsel in its discretion, "in such

circumstances as the court may deem just." *Castner v. Colorado Springs

Cablevision*, 979 F.2d 1417 (10th Cir. 1992). In determining whether justice

requires appointment of counsel, the court considers the plaintiff's financial

ability to retain counsel, the merits of plaintiff's claim, and plaintiff's capacity

to prepare and present the case without the aid of counsel. *Hill v.

SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)(citing

*Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

Plaintiff has shown the court that he has diligently but unsuccessfully

sought counsel. Nonetheless, given plaintiff's capacity to prepare and present his case without the aid of counsel, coupled with the findings below regarding the merits of the case, the court denies the motion for counsel.

**DEFENDANTS' MOTIONS TO DISMISS**

### Improper service of process

The City of Garnett, Kansas, and its City Attorney, Terry Solander, claim that service as to them was 19 days late, and move to dismiss, apparently pursuant to Fed.R.Civ.P. 12(b)(2) (lack of personal jurisdiction), and (b)(5)(insufficiency of service of process).

It is undisputed that these two defendants were not timely served. "The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service." *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir.1995). "If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service." *Id.*

Plaintiff correctly responds that he was relieved of the duty to serve

7

defendants by virtue of a court order. When the Magistrate Judge granted plaintiff's Motion for Leave to Proceed in forma pauperis, he added: "The clerks office shall proceed with service of process, except to those defendants plaintiff has directed not to be served until 120 days have past(sic) since the filing of the Complaint." Dk. 4. The clerk's office thus had to examine the Complaint to determine which defendants to serve immediately. The Complaint states that plaintiff intends to add the defendants named in paragraph five "timely after 120 days, or sooner." Dk. 1, para. 5. The court finds the Complaint's directions about when to serve the defendants listed in paragraph five, which include The City of Garnett, Kansas and Terry Solander, to be ambiguous, at best, and to require a great deal of interpretation.

Plaintiff states that he called clerk's office employees before and after the 120 days ran in an attempt to timely serve all defendants, and believes that through an oversight, the clerk's office employees failed to timely serve these two defendants. Dk. 103-2. All defendants mentioned in the confusing paragraph five of the Complaint were timely served except the City of Garnett and Terry Solander. Having reviewed the Complaint's directions regarding service, the Magistrate Judge's order regarding

8

service, and the manner in which service was effected on the other defendants, the court finds any confusion regarding the timing of service for these two defendants to be completely understandable.

Because the plaintiff has shown good cause for his failure to timely serve these defendants, the court declines to dismiss them for lack of personal jurisdiction.

**Conversion**

In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint. *Burnham v. Humphrey Hospitality Reit Trust Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and then "all parties ... [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).

[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is

9

central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). Such is the case with the copy of the Plaintiff's Advertisement attached as Exhibit A to the Anderson County defendant's motion to dismiss, (Dk.20, 21). Other documents, however, are attached to various motions to dismiss or to the plaintiff's responses but are not referred to in or central to the petition. Rather than convert any motion to a summary judgment motion at this early stage of the proceedings, the court shall disregard those exhibits and decide the motions solely as motions to dismiss.

## 12 b (6) dismissal standard

Defendants have filed motions to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Under this standard, "the mere metaphysical

10

possibility that some plaintiff could prove some set of facts in support of the

pleaded claims is insufficient; the complaint must give the court reason to

believe that this plaintiff has a reasonable likelihood of mustering factual

support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

F.3d 1174, 1177 (10th Cir. 2007). The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a

claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir.

2008).

> "Plausibility" in this context must refer to the scope of the allegations
> in a complaint: if they are so general that they encompass a wide
> swath of conduct, much of it innocent, then the plaintiffs "have not
> nudged their claims across the line from conceivable to plausible." *Id.*
> at 1974.

*Robbins*, 519 F.3d at 1247-48.

"[C]omplaints in §1983 cases against individual government actors

pose a greater likelihood of failures in notice and plausibility because they

typically include complex claims against multiple defendants." *Robbins*, 519

F.3d at 1248-49.

> In § 1983 cases, defendants often include the government agency
> and a number of government actors sued in their individual
> capacities. Therefore it is particularly important in such circumstances
> that the complaint make clear exactly who is alleged to have done
> what to whom, to provide each individual with fair notice as to the
> basis of the claims against him or her, as distinguished from

11

collective allegations against the state. *See Twombly*, 127 S.Ct. at
1970-71 n. 10.

*Robbins*, 519 F.3d at 1248-49.

Pro se complaints, however inartfully pleaded, must be liberally
construed, and are held to less stringent standards than formal pleadings
drafted by lawyers. *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200,
167 L.Ed.2d 1081 (2007). *See Martinez v. Garden*, 430 F.3d 1302, 1304
(10th Cir. 2005). "[The] court, however, will not supply additional factual
allegations to round out a plaintiff's complaint or construct a legal theory on
plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170,1173-74 (10th
Cir.1997) (quotations and citations omitted). The court should not be the
pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th
Cir.1991), and will not accept as true conclusory allegations unsupported
by factual allegations. *Oxendine v. Kaplan*, 241 F.3d 1272, 1306 (10th Cir.
2001). The court's "broad reading of the plaintiff's complaint does not
relieve the plaintiff of the burden of alleging sufficient facts on which a
recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

### Section 1983

42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance,

12

regulation, custom, or usage, of any state ... subjects or causes
to be subjected, any citizen of the United States ... to the
deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured in
an action at law, suit in equity, or other proper proceeding for
redress.

To state a claim under Section 1983, plaintiff must allege that a person has

deprived them of a federal right, constitutional or statutory, and that the

person acted under of color of state law in doing so. *Kentucky v. Graham*,

473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Gomez v.

Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980);

*Houston v. Reich*, 932 F.2d 883, 890 (10th Cir.1991).

### Constitutional deprivation

"Section 1983 imposes liability for violations of rights protected by the

Constitution, not for violations of duties of care arising out of tort law."

*Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d

433 (1979)." *Haines*, 82 F.3d at 1508. Defendants contend that the

allegations of the Complaint fail to state a violation of plaintiff's

constitutional rights. The Court disagrees. Among plaintiff's many

allegations of defendants' violations of his constitutional rights are two that

arguably state a deprivation of a federal right.

The first is plaintiff's contention that he contracted to have his

13

advertisement run a second time, but that defendants, by their threats and

coercion to the paper, effectively prevented him from expressing himself

through the advertisement. That advertisements can be protected speech

is clear. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct.

710, 11 L.Ed.2d 686 (1964). The facts alleged in the Complaint, if proven,

could lead a trier of fact to find that defendants denied plaintiff the right to

engage in expression protected by the First Amendment by viewpoint

discrimination. *See Ward v. Rock Against Racism*, 491 U.S. 781, 795, n.

5,109 S.Ct. 2746, 109 S.Ct. 2746 (1989) (citation omitted).[1]

    The second is plaintiff's claim of an equal protection violation. The

Equal Protection Clause prohibits state and local governments from

treating similarly situated persons differently. *City of Cleburne v. Cleburne*

*Living Center, Inc.*, 473 U.S. 432, 439-41,105 S.Ct. 3249, 87 L.Ed.2d 313

(1985). To make such a claim, as a class of one, plaintiff "must prove that

he was singled out for persecution due to some animosity" on the part of

defendants by showing that "the action taken by the state, whether in the

form of prosecution or otherwise, was a spiteful effort to 'get' [him] for

---

[1]"The relevant question is whether the challenged regulation
authorizes suppression of speech in advance of its expression."
*Ward*, 491 U.S. at 795 n. 5.

14

reasons wholly unrelated to any legitimate state objective." *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir.2001), quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995). As with any equal protection claim, plaintiff must also demonstrate that he was treated "differently than another who is similarly situated." *Id*, quoting *Buckley*, 933 F.2d at 859 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

Plaintiff alleges that he was treated differently than defendants were by the newspaper in that both plaintiff and defendants paid to place advertisements in *The Coffey County Republican* on November 3rd regarding the upcoming election, but only defendants were permitted to do so. Although defendants may ultimately prevail in showing that plaintiff was not sufficiently "similarly situated" to defendants, or that the newspaper made a rational distinction between Plaintiff's Advertisement and the Responsive Advertisement, plaintiff's Complaint meets the threshold showing to state a claim on both counts.

Mindful of the importance that the Complaint make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations against the state, *see Twombly*, 127 S.Ct. at 1970-71 n. 10.

15

*Robbins*, 519 F.3d at 1248-49, the court examines whether the various defendants may be found liable for either of these potential constitutional deprivations.

### City/County/County Commissioners

The Complaint does not specify any action allegedly taken by the City of Garnett or the Anderson County Commissioners. It appears that plaintiff named the Anderson County Commissioners because defendant Campbell, who signed the Responsive Advertisement as "Attorney at Law," serves as the Anderson County Counselor. Similarly, it appears that plaintiff named the City of Garnett, Kansas because defendant Solander serves as its City Attorney. General assertions are made that all defendants engaged in conspiracy and deprived plaintiff of various constitutional rights.

Section 1983 does not subject municipalities to vicarious liability for the acts of their employees; municipal taxpayers are liable only for the municipality's own misdeeds. *Milligan-Hitt v. Board of Trustees of Sheridan County School Dist. No. 2,* 523 F.3d 1219, 1223 (10th Cir. 2008), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

16

> A municipality can only be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479, 106 S.Ct. 1292.

*Beedle v. Wilson*, 422 F.3d 1059, 1067 -1068 (10th Cir. 2005).

Municipal liability will be found only if the unconstitutional action executes or implements an official governmental custom, practice or policy, *id.* at 694, 98 S.Ct. 2018, or if the plaintiff's rights were violated by one of the entity's final policymakers, *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007). The complaint is devoid of allegations of any custom or policy of Coffey County or of the City of Garnett or of Anderson County which allegedly caused any constitutional injury to plaintiff.

The Complaint specifically attributes two acts to the Coffey County Commissioners: 1) it never responded to a copy it received of plaintiff's letter to Judge Fromme, Dk. 1, para. 15; 2) it never responded to plaintiff's complaints voiced during his appearance before the Commission in

17

November of 2006 about "liability imputed to them by Witteman," Dk. 1, para. 39. County Commissioners are, of course, final policymakers for the County, but their alleged failure to respond to plaintiff does not violate plaintiff's constitutional rights. Negligence does not state a §1983 claim. *Jones v. Salt Lake County,* 503 F.3d 1147, 1163 (10th Cir. 2007); *Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995) ("Liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant, and not on negligence.") (quotations omitted).

Additionally, in order for liability to arise under §1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993) (affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"); *Coleman v. Turpen*, 697 F.2d 1341, 1346 n. 7 (10th Cir.1982) (noting defendants cannot be liable under §1983 unless personally involved in the deprivation). Nothing in plaintiff's complaint indicates any personal participation by the individual county commissioners, either of Coffey County, or Anderson County. Accordingly, the §1983 claims against these defendants shall be dismissed.

**Color of law**

18

The remaining defendants who have moved to dismiss allege that none of them acted under color of state law. It is plaintiff's burden to meet the jurisdictional prerequisite that the defendants acted under color of state law. *See Dry v. City of Durant*, 242 F.3d 388, 2000 WL 1854140, 6 (10th Cir. 2000).

### Defendant Witteman

Plaintiff concedes that most defendants are not alleged to be state actors. Plaintiff's primary theory is that defendant Witteman is a state actor, and that other defendants conspired with him to deprive plaintiff of his constitutional rights. Plaintiff notes that defendant Witteman signed the Responsive Advertisement as Douglas P. Witteman, "Coffey County Attorney," instead of as "Attorney at Law," as did all other signatories. Plaintiff claims that defendant Witteman directed and endorsed the Responsive Advertisement under color of law and used and misused the power of his office to impermissibly interfere with plaintiff's right to publish his second advertisement. *See e.g.*,Dk. 1, para. 69. Plaintiff's assertion that defendant Witteman acted under color of state law appears to rely upon the law that "an individual employed by the state who violates another individual's federal rights will "generally" (*i.e.*, in most cases), do so by

19

virtue of the authority vested in them under state law." *Jojola,* 55 F.3d at 492 -494.

To act under color of state law or authority for purposes of section 1983, the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Additionally,"[i]t is firmly established that a defendant in a §1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49-50, 108 S.Ct. at 2255-56 (emphasis added) (citation omitted). *See Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir.1979).

Under Kansas law, the powers granted to a county attorney are set forth by statute. They are, generally:

> to appear in any court having jurisdiction within the county and prosecute or defend on behalf of the people all actions and proceedings, civil or criminal, in which the state or the county is a party or interested; upon request by any judge of the district court of the county, to appear on behalf of the state before such judge, and prosecute all complaints made in behalf of the state of which such judge has jurisdiction; to conduct any criminal examination which may be had before such judge and to prosecute certain civil suits before such judge in which the county is a party or interested; and to give opinions and advice to the board of county commissioners and other

20

> civil officers of the county, when requested by such board or officers,
> upon all matters in which the county is interested, or relating to the
> duties of such board or officers, in which the state or county may
> have an interest.

KSA §19-702- 04. None of these statutory duties requires or permits the county attorney to speak on political matters such as the election of a local judge or the acts of a local citizen, or to exert any influence whatsoever on the publisher of the local newspaper, or to join with other attorneys in expressing his opinion on any topic. In short, no act defendant Witteman is alleged to have taken arguably flowed from any power he possessed by virtue of state law, nor was any alleged act he took related in any meaningful way to the performance of his official duties, stated above.

The crucial issue is whether Defendant Witteman, by using his official title when he endorsed the Responsive Advertisement, met the "color of state law" requirement.[2] "It is the nature of the act performed, not the clothing of the actor ... which determines whether [a public official] has acted under color of law." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975) (quoting *Johnson v. Hackett*, 284 F.Supp. 933, 937 (E.D.Pa.1968)), *cert. dismissed*, 429 U.S. 118 (1976). Accordingly, not

---

[2]Surprisingly, counsel for defendant Witteman fails to address this issue.

21

every action undertaken by a person who is a state official is attributable to the state.

The United States Supreme Court has held that acts of a state officer in the ambit of his personal pursuits are not acts under color of state law. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Thus the mere fact that defendant Witteman is a state officer or signed the Responsive Advertisement in his official capacity, or spoke to Catherine Faimon about the two advertisements does not mean that he acted under color of state law. *See  Byrne v. Kysar,* 347 F.2d 734, 736 (7th Cir.1965) (holding that an assistant state's attorney who executed a petition by adding his official title to his signature did not act under color of law within the meaning of  §1983, where he signed not in his official position but as a private citizen), *cert. denied*, 383 U.S. 913 (1966). "The fact that he added his official title to his signature is of no import." *Id.*  Officers do not act under color of law when their acts are in "the ambit of their personal pursuits." *Monroe v. Pape*, 365 U.S. 167, 185 (1961). Accordingly, the Tenth Circuit has held that a person's position as sheriff does not make all of his actions under "color of law"; rather, it is only when the sheriff exercises power granted by the state that his actions become state actions. *Norton v. Liddel*,

620 F.2d 1375, 1379-80 (10th Cir.1980).

"The Supreme Court has never held that objective indicia of state authority, without more, can bring an officer's otherwise "purely personal pursuits" within the scope of § 1983." *Dry,* 242 F.3d 388, 2000 WL 1854140, 4 (rejecting the proposition that the defendants' official attire, standing alone, is sufficient to establish action under color of state law), quoting *Robinson v. Davis*, 447 F.2d 753, 759 (4th Cir. 1971) ("It is plain that a state officer is not necessarily acting in his official capacity merely because he is clothed in official garb"), *cert. denied*, 405 U.S. 979 (1972). Thus, even the acts of on-duty law enforcement officers are not always under color of law. *See Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir.1996) (on-duty police officers who used police property to stage a robbery as a practical joke did not act under color of law because they did not use their state authority to carry out their plan and their acts were unrelated to the performance of their official police duties); *Lusby v. T.G. & Y Stores, Inc., 749 F.2d 1423 (10th Cir.1984)* (concluding that an officer's on or off-duty status is not dispositive of whether he is acting under color of law.) *See also Jojola*, 55 F.3d at 493-94 (dismissing case where school janitor alleged to have sexually molested a student did not act under color

23

of law,); *D.T. v. Independent Sch. Dist. No. 16*, 894 F.2d 1176, 1186-88 (10th Cir.), *cert. denied*, 498 U.S. 879 (1990) (finding that a teacher who sexually abused a student during a summer vacation did not act under color of law because there was no real nexus between the sexual abuse and the public school).

Defendant Witteman's lack of actual state authority is not determinative, however. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is [also] action taken under color of state law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)), overruled on other grounds by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). The Complaint alleges that Witteman's endorsement of the Responsive Advertisement as County Attorney swayed the electorate to retain Judge Fromme.  *See* Dk.1, para. 26, 69, 88. But the Complaint does not assert that defendant Witteman explicitly asserted his official authority to anyone at *The Coffey County Republican* or elsewhere. Nor do the allegations of the Complaint permit the inference that the County Attorney implicitly invoked the power and prestige of his office to the newspaper, or that the newspaper's

24

decision to print the Responsive Advertisement and pull Plaintiff's Advertisement was due even in part to defendant Witteman's official role. The mere fact that the prestige of one's office may have enhanced his influence over the newspaper is not enough to convert his actions into state action. *See Johnson v. Knowles*, 113 F.3d 1114, 1117 -1118 (9th Cir.1997).

The Complaint specifically alleges that the Coffey County Bar Association, the "FBA," Smith, Fromme, Ryburn and Campbell threatened the newspaper's publisher and used extortion, bribery, and "coercion of blackmail," to convince her to run the Responsive Advertisement instead of Plaintiff's Advertisement. Dk. 1, p. 10. para. 28. Defendant Witteman is not included in the defendants specifically alleged to have participated in such acts, either personally or in his capacity as County Attorney. The Complaint further alleges that the Responsive Advertisement was paid for by funds from the Coffey County  Bar Association, not from defendant Witteman or the County Attorney's office. *Id*, p. 11, para. 30.

"It is the plaintiff's burden to plead, and ultimately establish, the existence of "a real nexus" between the defendant's conduct and the defendant's "badge" of state authority in order to demonstrate action was

taken 'under color of state law.'" *Jojola*, 55 F.3d at 492 -494. Here, defendant Witteman's official authority is not alleged to have contributed significantly to the unconstitutional conduct of which the plaintiff complains. The allegations of the Complaint simply do not permit an inference that defendant Witteman's status as County Attorney made any difference whatsoever to *The Coffey County Republican*, or that the same actions which arguably violate the First Amendment or the equal protection clause would not have been taken by the newspaper had defendant Witteman not been the County Attorney, or had he endorsed the Responsive Advertisement as "Attorney at Law," instead of as "County Attorney." To find otherwise would improperly impose liability on the state for conduct for which it cannot be fairly blamed. Accordingly, the court finds that defendant Witteman's alleged acts are private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, and not conduct occurring under color of state law.

### Witteman - failure to prosecute

Plaintiff additionally claims that defendant Witteman refused to initiate prosecution on the criminal referral/complaint plaintiff filed with defendant Witteman in his capacity as Coffey County Attorney, seeking to prosecute

the defendants under Kansas criminal statutes.

The County Attorney is entitled to absolute prosecutorial immunity for acts intimately associated with the judicial process. *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939 (1991). "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976); *Pheiffer v. Hartford*, 929 F.2d 1484, 1489 (10th Cir.1991). The decision whether to file certain charges is central to the task of initiating a prosecution, and as such is entitled to absolute immunity protection. *See, e.g., Mishler v. Clift*,191 F.3d 998, 1008 (9th Cir.1999) ("[f]iling charges and initiating prosecution are functions that are integral to a prosecutor's work"). Accordingly, to the extent plaintiff complains of defendant Witteman's failure to prosecute, plaintiff fails to state a claim for relief under §1983.

### Solander/Campbell

To the extent that the Complaint asserts that defendant Solander, [the Garnett City Attorney,] and/or defendant Campbell, [the Anderson County Attorney,] acted under color of law, *see* Dk. 1, Dk. 113, the court finds their acts alleged in the Complaint constitute private conduct, not taken under color of law, based upon the same law and analysis set forth

27

above regarding defendant Witteman.

## Defendant Fromme

Plaintiff admits he has brought no §1983 claim against defendant Fromme. (Dk. 71, 75.). *See* Dk. 102 (so finding).

## Other individual defendants

Plaintiff concedes that most defendants are not alleged to be state actors, apparently recognizing that attorneys engaged in the private practice of law are not acting under color of state law. *See Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir.1983); *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Plaintiff bases his claim of other defendants' state action upon their interactions with defendants Witteman, Solander, and/or Campbell. Because the court has found that none of these three defendants acted under color of law, plaintiff's claim that the other individual defendants acted together with these three defendants, or any of them, fails to establish the requisite state action.

A state, its agencies or officials may not be assessed liability for the acts of a private individual, except by a "fair attribution" of those actions to the State. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-37, 102

28

S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982). For a private individual's conduct to constitute state action, "the private party must have acted together with or obtained significant aid from State officials or engaged in conduct otherwise chargeable to the State." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). Here, no fair attribution of any defendant's acts to the state is possible, regardless of which test is used to determine whether the challenged conduct constitutes action "under color of law" by private parties. *See Lugar*, 457 U.S. at 939; *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453-56 (10th Cir.1995) (discussing the nexus test, the symbiotic relationship test, the joint activity test, and the public function test). Private conduct that is not "fairly attributable" to the state under these tests is not actionable under §1983, "no matter how atrocious" it is. *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007).

Although private parties may be liable under § 1983 if a conspiratorial action with state officials is proven, *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), the Court has found that defendants Witteman, Solander, and Campbell, the alleged conspirators, were not acting under color of law. Plaintiff's bare and conclusory allegations of a conspiracy between defendant Witteman or other alleged state actors and

29

other individual defendants in this case are insufficient to establish that any of them acted under color of state law. *See Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir.1990). Nor has any conspiracy between the private parties and any municipality, county, or state been shown.

Further, the Complaint fails to allege facts showing how some of the individual defendants were personally involved in the enumerated events. For instance, the role of defendant Joy in the alleged offenses is completely unmentioned. Having carefully reviewed the acts alleged in the Complaint, the court finds that neither defendant Witteman nor any other individual defendant who has moved to dismiss acted under color of state law or is amenable to suit under 42 U.S.C. §1983. The court finds it unnecessary to reach the defendants' assertions that they are entitled to qualified immunity.

### Section 1985

Plaintiff claims that defendants violated 24 U.S.C. §1985 by conspiring to interfere with plaintiff's right to publish his second advertisement opposing Judge Fromme's retention, which plaintiff alleges

he had previously paid for and *The Coffey County Republican* had previously agreed to publish. Plaintiff alleges that defendants interfered with his lawful political activity and violated his rights to free speech and equal protection.

The first clause of section 1985(3) makes it illegal for "two or more persons ...  to conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" To establish a claim in violation of this section, the plaintiff must allege and prove the following elements:(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert. denied,* 510 U.S. 1093 (1994), *citing Griffin v. Breckenridge*, 403 U.S. 88, 102-02, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Case law establishes the additional requirement of class-based or racially discriminatory animus.

> Section 1985(3) creates a cause of action against persons who conspire to deprive a person or class of "equal" protection or "equal" privileges and immunities. A violation of section 1985 must include class-based or racially discriminatory animus. *Griffin v. Breckenridge*,

31

> 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir.1977). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985 ." *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir.1979) (per curiam).

*Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994), *cert. denied*, 515 U.S. 1142 (1995). Section 1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin,* 403 U.S. at 101-02.

The statute does not protect "every class which the artful pleader can contrive." *Larkin v. Town of West Hartford*, 891 F. Supp. 719 (D. Conn. 1995), *aff'd*, 101 F.3d 109 (2d Cir. 1996). The term "class," in this context, connotes something more than a group of individuals who share a desire to engage in conduct that is disfavored by some. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993). "*Griffin* evidenced a general concern that actions brought under Section 1985 must be carefully delineated in accordance with the statutory purposes of the Act in order to avoid the unintended creation of a general federal tort law." *Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir.), *cert. denied*, 454 U.S. 1110 (1981).

32

The other "class-based animus" language of this requirement has been narrowly construed and does not reach conspiracies motivated by an economic or commercial bias. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Nor are the disabled a class for the purposes of Section 1985. *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir.1983), *cert. denied*, 465 U.S. 1103 (1984). Other jurisdictions have held "that § 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation." *Farber v. City of Paterson*, 440 F.3d 131,143 (3d Cir. 2006); *D'Aurizio v. Palisades Park*, 963 F. Supp. 387, *aff'd*, 151 F.3d 1024 (3d Cir.1998), *cert. denied*, 525 U.S. 870 (1998). *See Wilhelm*, 720 F.2d at 1175 (stating in dicta that in *Scott*, "The Court made it clear that § 1985(3) did not cover conspiracies motivated by economic, *political* or commercial animus.") (emphasis added). Plaintiff's complaint makes no allegations of invidious discrimination directed against an identifiable class, thus under well established precedent of the Tenth Circuit, his §1985 claim is not actionable.

Further, "The Court has held that § 1985(3) does not protect under

the First Amendment against wholly private conspiracies." *Wilhelm*, 720

F.2d at 1176.  *See Bray*, 506 U.S. 263; *Tilton v. Richardson,* 6 F.3d 683,

686 (10th Cir.1993). Assuming there was a conspiracy as alleged by

plaintiff, it was a conspiracy among private actors only. Accordingly

plaintiff's complaint fails to state a claim under section 1985.

### RICO

Plaintiff's Complaint alleges a violation of 18 U.S.C. § 1962 (b), (c)

and (d).

> In order to bring a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." (Citation omitted.)

*Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007). *See* 18 U.S.C. §

1962(a), (b), & (c).

"Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any

"act which is indictable" under federal law and specifically includes mail

fraud and wire fraud. These underlying acts are "referred to as predicate

acts, because they form the basis for liability under RICO." *BancOklahoma

Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir.1999)

(internal quotation omitted). Plaintiff asserts the predicate acts of wire and

mail fraud.

34

To establish the predicate act of mail fraud [the plaintiff] must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." (Citations omitted.) "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." (Citation omitted).

*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006), *cert. denied*, __ U.S. __,127 S.Ct. 1334 ,167 L.Ed.2d 81 (2007). In addition, plaintiff must plead the nine elements of actionable fraud. "Failure to adequately allege any one of one of the nine elements is fatal to the fraud claim." *Id.*

Additionally, a plaintiff must plead the predicate acts of fraud in a RICO claim with particularity. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989) (mail fraud and wire fraud). Conclusory allegations of conspiracy and mail and wire fraud fail to adequately state a RICO claim. To satisfy the particularity requirements of Rule 9(b), where, as here, mail and wire fraud are alleged as predicate acts of a RICO claim, the plaintiff must specify the time, place, and content of the alleged false representation, the identity of the party making the false statements and the consequences thereof, and how the particular mailing or transaction furthered the fraudulent scheme. *Tal*, 453 F.2d at 1263.

Plaintiff's Complaint fails to allege the required elements of a RICO

35

claim. Even if plaintiff were given an opportunity to cure his pleading by adding the requisite elements, complete with their specificity, mail fraud is not committed simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. The same is true for wire fraud. Nothing in the Complaint indicates any belief by plaintiff that the defendants attempted, conspired, committed or intended to commit mail or wire fraud.

Plaintiff's Complaint additionally mentions Hobbs Act extortion. The Hobbs Act prohibits interference with interstate commerce by extortion, as well as attempts or conspiracies to commit extortion.18 U.S.C. § 1951(a). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2). Nothing in the Complaint indicates that defendants, or any of them, wrongfully obtained property from anyone by extortion or otherwise. Plaintiff's assertions that the defendants, by threats and their payment of the required fee, got the paper to publish the Responsive Advertisement and not to publish Plaintiff's Advertisement a second time, do not state a claim under this

36

statute. Plaintiff's conclusory assertions of bribery meet the same fate.

Additional reasons compel the dismissal of plaintiff's RICO claim.[3] Under RICO, "the 'person' and the 'enterprise' engaged in racketeering activities [must] be different entities." *Bd. of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir.), *cert. denied*, 506 U.S. 918 (1992). *See* 18 U.S.C. § 1962 (c). RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Thus plaintiff must allege that the individual defendants "were part of an enterprise which had an existence and purpose distinct from any one of them to establish [RICO] liability." *Id.* (emphasis added). *See Dopp v. Loring*, 54 Fed.Appx. 296, 298, 2002 WL 31839852, 1 (10th Cir. 2002), *cert. dismissed*, 538 U.S. 1054 (2003). Here, plaintiff alleges that the alleged RICO enterprises are certain named defendants, *i.e.*, the Coffey County Bar Association, the Coffey County Commissioners, the Anderson County Commissioners, "The Paper," and "all defendants," rather than different entities. Dk. 1, p/ 6, 7, 10,

---

[3]The court does not agree with defendants' assertion that plaintiff lacks standing to bring a RICO claim, as the Complaint sufficiently asserts injury to plaintiff's business or property by reason of a RICO violation. *See* Dk. 1, paras. 105, 106.

25-26.  Plaintiff additionally includes the "FBA," a non-defendant, in his list of enterprises. The court presumes this reference is to the Franklin County Bar Association, but finds no predicate act allegedly taken by that entity.

RICO defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within a ten-year period. *Id.* § 1961(5). Although plaintiff alleges that the newspaper scheme was related to predicate acts in and after 1996, the Complaint conclusorily characterizes such acts as efforts to "sully and disparage plaintiff's reputation." Dk. 1, p. 14. The Complaint fails to show that the acts allegedly taken prior to October of 2006 are part of the same common scheme as the acts occurring thereafter. Even if defendants' acts from October 30th through on or about November 6th, 2006 were related as part of a common scheme, plaintiff has failed to allege that they pose a threat of continuing criminal activity. In a RICO case, the complaint must allege continuity. *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001). At best, what plaintiff alleges is a closed-ended series of predicate acts constituting a single scheme to accomplish a discrete goal [publication of the Responsive Advertisement in lieu of Plaintiff's Advertisement] directed at only one individual [the plaintiff] with no potential to extend to other persons or entities. *See Boone v.*

38

*Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir.1992).

Therefore, the allegations of the Complaint do not show sufficient continuity

to sustain plaintiff's RICO claim.

Here, as in *Duran*, plaintiff simply has not alleged "the type of

long-term criminal activity envisioned by Congress when it enacted RICO."

*Duran*,  238 F.3d at 1271 (affirming dismissal of RICO claims). Because it is

patently obvious that plaintiff will be unable to state a RICO claim against

any defendant, an amendment of plaintiff's complaint would be futile.[4]

**Request to amend complaint**

The court notes that on several occasions throughout his responsive

papers, the plaintiff requests leave to amend his complaint and seeks the

court's guidance, as well as that of defendants, in curing his pleading

deficiencies.

"Dismissal of a pro se complaint for failure to state a claim is proper

only where it is obvious that the plaintiff cannot prevail on the facts he has

alleged and it would be futile to give him an opportunity to amend.

---

[4]Three named defendants have been served only recently, if at all, and have not yet filed responsive pleadings. The amended complaint fails to state a claim under § 1985 and under RICO even as to these unserved defendants, but the §1983 claims involve individual determinations which cannot be made absent a responsive pleading.

(quotation omitted)." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Here, the facts alleged, no matter how they may be massaged in the future, fail to plausibly violate any of the federal laws invoked by the plaintiff.

**State law claims**

Because no viable federal claim has been presented under 42 U.S.C. §1983, §1985 or RICO, the court lacks any basis for subject matter jurisdiction. The court declines to invoke its supplemental jurisdiction over any claims arising under state law. *See* 28 U.S.C. § 1367(c)(3) (stating a district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction"); *Bauchman v. West High Sch.*,132 F.3d 542, 549 (10th Cir.1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.' "), *cert. denied*, 524 U.S. 953 (1998) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). Accordingly, the court offers no opinion on the viability of any of plaintiff's state law claims.

IT IS THEREFORE ORDERED that the following motions to dismiss are granted: Dk. 9, 20, 22, 51, 60, 63 and 89. Plaintiff's federal claims are

dismissed for failure to state a claim upon which relief may be granted, and plaintiff's claims arising under state law are dismissed without prejudice.

IT IS FURTHER ORDERED that the following motions are denied: Dk. 43, 72 and 118.

IT IS FURTHER ORDERED that Dk.116 is granted to the extent that plaintiff is permitted leave to file excess pages in his responses to defendants' motions to dismiss, as well as all pleadings currently on file.

Dated this 6th day of August, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge